Filed 1/28/25  P. v. Hurley CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E082651 |
| v. | (Super.Ct.No. FWV1503052) |
| TAJH ABRAHAM HURLEY, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Jon D. Ferguson, Judge.  Affirmed.

Cynthia M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Felicity Senoski and Robin Urbanski, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Tajh Abraham Hurley filed a petition for resentencing pursuant to Penal Code former section 1170.95,[1] which the court denied after holding an evidentiary hearing.  On appeal, defendant contends the court violated his Sixth Amendment constitutional right to confrontation by permitting the introduction of his mother's prior inconsistent statements into evidence.  We affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND[2]

On August 1, 2015, an officer responded to a call regarding possible gunshots. The officer contacted the homeowner, defendant's mother; she indicated defendant had

---

[1]  All further statutory references are to the Penal Code unless otherwise indicated. Effective June 30, 2022, Assembly Bill No. 200 (2021-2022 Reg. Sess.) amended and renumbered section 1170.95 as section 1172.6.  (Stats. 2022, ch. 58, § 10.)

On the court's own motion, we take judicial notice of the prior record and our opinion in defendant's appeal from the court's initial denial of his petition at the prima facie stage.  (*People v. Hurley* (June 22, 2023, E079223) [nonpub. opn.] (*Hurley*); Evid. Code, § 459.)

[2]  To contextualize the issue raised in this case, we recount the facts as recited in *Hurley*, which we derived from the preliminary hearing transcript.  Defendant stipulated the preliminary hearing transcript would provide the factual basis for his plea.  The preliminary hearing consisted of the testimony of two officers as to what defendant's mother and the victim told them.  (*Hurley*, *supra*, E079223.)

At the evidentiary hearing below, the People used the preliminary hearing transcript in an attempt to refresh defendant's mother's recollection and requested the court take judicial notice of it.  The court below indicated on several occasions that it was going to review the preliminary hearing transcript; however, it later indicated, "on further reflection, I declined to review the preliminary hearing transcript."  "I felt that that was inappropriate for the Court to review the preliminary hearing transcript."  Thus, the court implicitly denied the People's request to take judicial notice of the preliminary hearing.

Assembly Bill No. 200 limited the use of prior appellate opinions by trial judges ruling on section 1172.6 petitions in most instances to "'the procedural history of the case recited.' [Citation.]" (*People v. Clements* (2022) 75 Cal.App.5th 276, 292; accord, *People v. Flores* (2022) 76 Cal.App.5th 974, 988; accord, *People v. Cooper* (2022) 77 Cal.App.5th 393, 400, fn. 9.)  "Hearsay evidence that was admitted in a preliminary

*[footnote continued on next page]*

been at the home earlier in the day while her boyfriend, the victim, was present. (*Hurley*, *supra*, E079223.)

Defendant had been speaking angrily to the victim. He asked the victim if he was willing to die for defendant's mother. Defendant pulled out a handgun and shot the victim three times at point-blank range. (*Hurley*, *supra*, E079223.)

Defendant left the residence. The victim incurred three gunshot wounds. Another officer responded to the emergency room where the victim identified defendant as the shooter. (*Hurley*, *supra*, E079223.)

The People charged defendant by information with attempted, premeditated murder (§§ 664, 187, subd. (a); count 1) and assault with a firearm (§ 245, subd. (a)(1); count 2). The People additionally alleged, as to the count 1 offense, that defendant had personally used a firearm (§ 12022.53, subd. (b)), personally and intentionally discharged a firearm (§ 12022.53, subd. (c)), and personally and intentionally discharged a firearm that caused great bodily injury (§ 12022.53, subd. (d)). As to count 2, the People alleged defendant had personally inflicted great bodily injury (§ 12022.7, subd. (a)). (*Hurley*, *supra*, E079223.)

Pursuant to a negotiated plea agreement, defendant pled no contest to attempted murder without premeditation and deliberation (§§ 664, 187) and admitted that he personally used a firearm in his commission of the offense (§ 12022.53, subd. (b)). In

_____

hearing pursuant to subdivision (b) of section 872 is inadmissible at the evidentiary hearing, unless made admissible by another exception to the hearsay rule. [Citation.]" (*Flores*, at p. 986.)

return, as provided in the plea agreement, the court dismissed the remaining count and allegations, and the court sentenced defendant to 19 years of imprisonment. (*Hurley*, *supra*, E079223.)

Defendant filed a form petition for resentencing pursuant to former section 1170.95. At the prima facie hearing on the petition, the People noted, "[D]efendant did plead to personal discharge of a firearm, so I do not believe he qualifies." (*Hurley*, *supra*, E079223.)

The court responded, "I remember I took the plea." The court asked defense counsel for his position. Defense counsel responded, "Nothing the [district attorney] said is incorrect. I'm ready for determination of prima facie today. I object to reasoning." (*Hurley*, *supra*, E079223.)

The court stated, "I believe it was filed as an attempted murder from the get-go; it wasn't a plea to an alternate charge, . . . he admitted to malice and a personal use of a firearm. I would be inclined to find no prima facie in the case, and deny it at this point." (*Hurley*, *supra*, E079223.)

Defendant appealed. We reversed the court's order denying defendant's petition and remanded the matter with directions to the court to issue an order to show cause and hold an evidentiary hearing. (*Hurley*, *supra*, E079223.)

On remand, the People called defendant's mother to testify. The People asked defendant's mother if she remembered throwing a birthday party on July 31, 2015. Defendant's mother's counsel asserted her Fifth Amendment right not to incriminate

herself. The court asked how answering the question would incriminate her. Counsel responded, "I'm just—this is going to be a standing objection to any of the questions relating to the incident dating back to 2015." The court requested an offer of proof as to how any of her answers would incriminate her.

The People responded that defendant's mother was never considered a suspect and, regardless, the statute of limitations would have run: "the People have no indication she would have committed a crime that day."

Defendant's mother's counsel stated, "for the record that given the conversations that I've had with my client, that it is still my belief that she still has a Fifth Amendment right that she can assert based on any potential testimony she may give as to the 2015 incident." The court directed defendant's mother to answer the question, ruling that counsel had not made a sufficient representation that she had any Fifth Amendment right based on any potential answer to the question.

Defendant's mother answered that she vaguely remembered throwing a birthday party for one of her sons on July 31, 2015. She did not recall picking defendant up upon his release from prison and letting him stay with her. She did not recall at what address she then lived.

The People asked if defendant's mother remembered dating the victim. She responded that she recalled that he was a coworker. She did not recall if he would hang out with her at her home.

She repeatedly indicated she did not recall speaking with officers in July or August of 2015.  The People asked her if she wanted to review a report written on August 1, 2015, to refresh her memory; she twice responded that she did not:  "I don't feel that that's going to help."

The court directed the People to show the transcript to defendant's mother, after which she said it did not refresh her recollection of her conversation with officers.  She did not recall the last time defendant was at her home.  She said he had not lived with her since he was 16 years old.  When asked if she remembered any period of defendant's life since he was 16 years old, she responded, "There was a lot of trauma going on in my life, and I can't remember everything.  I had a nervous breakdown, and those—I don't recall a lot of things."

The People asked defendant's mother if there was a time when she had to call 911 because someone was shot in her home.  She responded, "I don't recall."  When asked if anyone had ever been shot in her home, she said, "I don't recall."

Defense counsel objected to the line of questioning.  The court responded, "It's rather incredulous testimony.  I think I'm going to give the [district attorney] some leeway, and I will certainly give you leeway on cross."  Defense counsel replied, "The Court has indicated that it's incredulous testimony.  [¶]  Is the Court concerned that [defendant's mother] may be perjuring herself?  [¶]  Because I think if the Court has such a concern, she does have a Fifth Amendment right."  The court disagreed with defense counsel and indicated it would continue to allow questioning from the People.

The People asked if defendant's mother remembered a time when she was ordered to appear in court. She answered, "I don't recall." She later responded, "I don't remember if I was here because I was subpoenaed, or if I was just here as support. I don't remember; it was so long ago, but I do remember coming to the courthouse." She said that defendant "was fighting a case," but she could not recall what the case was about. She could not recall if the case he was fighting related to a shooting at her home. She did not recall if the victim was at the birthday party. She did not recall if the victim had met defendant.

The court permitted defendant's standing objection to questions based on lack of foundation, lack of personal knowledge, and improper impeachment. However, the court noted, "I am concerned, though. If she doesn't remember a lot of these things, I think it's unrealistic she's going to remember others, but I'll allow you some leeway."

After the People asked further questions regarding statements she made to the police officers, to which defendant's mother responded she could not recall, the court opined: "Here's the concern: I don't know that you're going to make any leeway. At this point, I mean, the question is, if she remembers things, and I don't know that this is getting her any closer to jogging her memory. And she's looked at a report, and she said it didn't refresh her recollection. [¶] I don't believe you've inquired as to what exactly she reviewed, but I don't anticipate—I'm overruling on the getting close to perjury right now." "At this point, I'm hearing that she's trying to refresh recollection, without much success. So I would recommend that you consider that you're not going to get any closer,

probably, from what it sounds like, unless you're showing her additional reports, and I don't know that that would refresh her recollection, but I'll give you some leeway.  But like I said, if you just start asking her—if you just keep asking her things, if she remembers, I think the answer is going to remain the same."

The People then requested permission to play the officers' audio recording of their interview with defendant's mother.[3]  Defense counsel objected.  The court ruled that it would allow the People to play the audio recording so that "maybe if she hears a voice, she can decide whether that—it's a different type of refreshing recollection; it's a different quality of testimony—evidence, actually, so overruled."

After playing a portion of the audio recording, the People asked defendant's mother if she recognized her voice.  She responded, "That does sound[] like it could be my voice."  When the People asked if the name identified by the voice on the recording was defendant's mother's name, defense counsel objected:  "The point of playing that audio was to determine if her recollection was refreshed.  We're not authenticating— that's not what we said we were doing here."  The People responded, "at this point I believe [defendant's mother] is feigning not remembering."  "And I believe that this is proper impeachment regarding her prior statement to officers."

Defense counsel observed, "If the People believe she's feigning not remember[ing], the People are implying she's perjuring herself."  The People replied, "What [defense counsel] is claiming is that every [time a] witness . . . has to be

---

[3]  The interview was conducted by at least two officers and involved at least 13 people in total.

8

impeached is . . . perjury. That is not the People's intention here." The court noted, "I don't think that that's—you have indicated feigning memory. I think every time somebody has that, it doesn't implicate Fifth Amendment privileges. At this point, I don't know that there's been enough to find that."

The court found "that these questions are foundational . . . under [Evidence Code section] 1235, pursuant to [section] 770 of the Evidence Code, that they're inconsistent with her prior statement given to the police and whether her statements here are inconsistent. I think it's appropriate." The court further found that not every time witnesses are impeached are their Fifth Amendment rights implicated. The court overruled defense counsels' objection finding "it's a potential prior [in]consistent statement, and there ha[ve] been significant inconsistencies already." The court indicated it would admit the statement made on the recording for the truth of the matter asserted so long as they were inconsistent with her testimony. The court then allowed the People to play the recording of the officers' interview with defendant's mother.[4]

The recording reflected that defendant's mother told the officers she had picked up defendant and brought him to her home the day before the shooting. He had slept on the couch overnight. They were having a birthday party that day for her other son. She had invited the victim. She identified the victim as her boyfriend. It was the first time defendant had met the victim.

---

[4] The court indicated, "The recording itself will come into evidence, will be the evidence. Exhibit 1-A [the transcript] will assist the Court as the trier of fact only; the recording itself prevails, and I'm making notes here as far as statements which would not be admissible as made by others for the truth."

Defendant had been drinking. At some point she could "tell that he was very drunk." Later that night, defendant, her other son, and his friends were being "really loud." She yelled downstairs and told them to go to bed. Defendant mouthed off to her and told her to leave them alone. She went down and asked defendant to speak with her in the garage; she told him that he needed to respect her because it was her home.

At some point, defendant asked the victim, "do you know my mom's history man?" The victim responded, "I'm okay with it." Defendant then "just started shooting." He shot the victim three times. She showed the officers exactly where she and the victim were located when defendant shot the victim. Defendant ran off. His mother called 911.

Defense counsel then cross-examined defendant's mother. She said, "I know that was me on the recording, that's the younger me, but I absolutely don't recall anything. I don't recall any—I don't recall any—any of that that I heard. I . . . don't recall anything." Defense counsel asked her if in 2015, "about the time that you would have had that birthday party for your son . . . were you consuming alcohol at any rate at that point?" She responded, "During that time—actually, for several years, I did drink, yes. I was a heavy drinker, yes."

Defense counsel asked, "Is it entirely possible that one of the reasons you don't remember giving any of those statements—is . . . that you were very intoxicated when you gave that statement?" Defendant's mother answered, "it could have been, yeah. I . . . was drinking a lot. I was going through a lot. I—I'm just surprised I wasn't admitted

10

into a mental hospital. I've been through a lot of trauma. So yes, I used to drink a lot to cope, yes."

Defendant's mother did not recall ever seeing defendant with a firearm or shooting anyone. She did not recall ever hearing gunshots.

The People then requested the recording of the officers' interview of defendant's mother be introduced into evidence. The People also argued "that the Court can review a preliminary hearing transcript as long as there's a hearsay exception. Based on the testimony and the prior ruling, I do believe that there now is a prior inconsistent statement where . . . the Court can review the testimony of the officer that testified as to [defendant's mother's] statement at that preliminary hearing."

The court noted, "That would be a hearsay exception for the preliminary hearing only. But I think—so sworn testimony of witnesses at preliminary hearings—if there's a statement, prior statement from this witness that is inconsistent, the Court could consider that, as well as other testimony of the witnesses which were subject to cross-examination who are otherwise not subject to hearsay."

The court further noted, "I think the specific nature of what was described in that recording is hugely inconsistent with her testimony in court, but there's a lot of corroborating evidence, and it is inconsistent. So I am going to admit Exhibit 1, and that will be the evidence. 1-A will be admitted for any reviewing Court to help with the audio." The court indicated it was admitting the audio recording only with respect to defendant's mother's responses to questions asked by one of the officers.

The People argued they had met their burden of proof in that defendant's mother informed the officers that defendant shot the victim: "There are no other defendants here, and this was clearly not a natural and probable consequences attempted murder. So I do think it is as straightforward as that, that the statement [defendant's mother] made to the officers is the more reliable statement that the Court should rely on, and that it very clearly states this is not a natural and probable consequences attempted murder, and the motion should be denied."

Defense counsel argued that "if the Court honestly believes that [defendant's mother] does remember what happened and is lying about it under oath, then I think that's very, very indicative that she's not somebody to be trusted at all. And if she's willing to lie under oath today, who's to say she was telling the truth on the night of the incident?" "If the Court is not in that position and the Court does believe that, perhaps, [defendant's mother] does not remember the incident at all, well, then, I think we're stuck with what she said today. I think she indicated today that she had been drinking heavily at the time, around the time of the incident, for several years on the basis of what I believe she described to the Prosecution as a traumatic, violent divorce, a relationship that . . . contain[ed] a great deal of domestic violence, either physically, verbally, emotionally, . . ."

Defense counsel continued, "I think it's logical and reasonable to conclude that the statement she made to the officers on the night of the incident may not actually reflect the truth of what happened at her house on August 1st, 2015. So I would ask the Court to

12

grant the petition on the basis that, essentially, we don't really have any reliable evidence whatsoever about what happened on that night, and without any reliable evidence, the Court cannot meet the burden beyond a reasonable doubt to show what happened."

The court noted, "So the evidence at this hearing was, [defendant's mother] who testified under oath—she, at least, finally, ultimately established that it was her on the recording. She indicated she did not have a recollection of it. I think there was some things that were hard for the Court to get beyond in terms of whether it was honest, innocent misrecollection, or true misrecollection, or there was some evasiveness." "She was rather evasive. She did not recall any shooting. Once the recording was played in court, it was clear that there was—she was an eyewitness to it, and very close [to] it. So I think, clearly, it was an inconsistent statement. [Section] 1235 of the Evidence Code allows the Court to consider it. I think it was properly admitted with the exceptions and limitations I noted. I did not include hearsay from other witnesses that were on that recording, only statements she made about the incident, which largely were inconsistent with her testimony." "I think . . . she was intentionally evasive in certain aspects of her testimony today."

"She had no motive to fabricate anything when she spoke to the officer. She might have that motive now with her son in custody and having been convicted and sentenced to a lengthy prison sentence. At that time it was fresher in her mind, obviously. She was describing an incident that had recently occurred."

13

"I do . . . find beyond a reasonable doubt that he is guilty of the crime of attempted murder. There is no theory which was described that is no longer valid in light of the change in law under [section] 1172.6 and an original [section] 1170.95. This was not a natural and probable consequences killing from the description in the hearing today, and also, there was no codefendant in any event. [¶] So for those reasons, I do find beyond a reasonable doubt that the defendant is guilty of the crime of attempted murder, and the petition is denied."

## II. DISCUSSION

Defendant contends the court's admission of defendant's mother's statements to officers in the audio recording violated his Sixth Amendment right to confrontation. We disagree.

### A. Confrontation Rights at Section 1172.6 Hearings.

"Resentencing under section 1172.6 is a completely voluntary process initiated by the petitioner, which cannot result in additional punishment. [Citation.] It therefore does not implicate . . . [the] Sixth Amendment . . . ." (*People v. Hill* (2024) 100 Cal.App.5th 1055, 1068; accord *People v. Williams* (2024) 103 Cal.App.5th 375, 402, review granted Sept. 11, 2024, S286314 ["Sixth Amendment principles . . . have no relevance in the section 1172.6 context. [Citation.]"]; see *People v. Ocobachi* (2024) 105 Cal.App.5th 1174, 1182 ["[B]ecause a section 1172.6 evidentiary hearing is a statutory act of lenity, a petitioner does not enjoy rights under the Sixth Amendment to the United States Constitution, and thus does not have a *constitutional* right to confrontation in a section

14

1172.6 evidentiary hearing."]; *People v. Schell* (2022) 84 Cal.App.5th 437, 444 ["Courts have unanimously held that section 1172.6 is an act of lenity in which the petitioner has no Sixth Amendment right[s] . . . .]; *People v. James* (2021) 63 Cal.App.5th 604, 610 ["[A] convicted person litigating a section [1172.6] petition does not enjoy the rights that the Sixth Amendment guarantees to criminal defendants who have not yet suffered a final conviction."].)

Here, defendant voluntarily initiated the instant proceedings pursuant to his filing of a section 1172.6 petition. By filing the petition, defendant sought resentencing pursuant to the Legislature's statutory act of lenity. Defendant did not face conviction or any increase in punishment. Thus, defendant did not have a Sixth Amendment right to confrontation at the hearing. Therefore, the court properly permitted the audio recording of defendant's mother's interview with officers into evidence.

B. Confrontation Clause.

Assuming arguendo that defendant had a Sixth Amendment right to confrontation at the hearing, we hold that the court properly admitted the recording.

The confrontation clause of the Sixth Amendment provides: "'In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . .' It '"provides two types of protections for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination."' [Citation.]" (*People v. Bharth* (2021) 68 Cal.App.5th 801, 813-814.)

"The Confrontation Clause includes no guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion. To the contrary, the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony." (*Delaware v. Fensterer* (1985) 474 U.S. 15, 21-22.)

Where the trial court determines that the witness's "lack of memory amounted to deliberate evasion," admission of the witness's prior inconsistent statements is not violative of the confrontation clause. (*People v. Sapp* (2003) 31 Cal.4th 240, 297; accord *People v. Perez* (2000) 82 Cal.App.4th 760, 767, fn. 2 ["[W]here the witness actually testified at trial, was subjected to lengthy actual cross-examination, and the loss of memory was feigned and evasive. . . . the witness was available for cross-examination within the meaning of the confrontation clause," such that the court's admission of her prior statements to an officer were proper]; see also *People v. Homick* (2012) 55 Cal.4th 816, 860 [No abuse of discretion in admitting prior inconsistent statements where the witness repudiated earlier statements, engaged in obvious feigned lapses of memory, and repeatedly refused "to refresh his recollection by examining the relevant document where he had made the statement he claimed not to recall."]; *People v. Gunder* (2007) 151 Cal.App.4th 412, 418 ["In order to admit the prior extrajudicial statement of a forgetful witness as an inconsistent statement, the forgetfulness must be feigned rather than the

consequence of a float though the waters of Lethe."]; *People v. Johnson* (1992) 3 Cal.4th 1183, 1219-1220 ["As long as there is a reasonable basis in the record for concluding that the witness's 'I don't remember' statements are evasive and untruthful, admission of his or her prior statements is proper."].)

"The circumstance of feigned memory loss is not parallel to an entire refusal to testify. The witness feigning memory loss is in fact subject to cross-examination, providing a [factfinder] with the opportunity to see the demeanor and assess the credibility of the witness, which in turn gives it a basis for judging the prior hearsay statement's credibility." (*People v. Gunder*, *supra*, 151 Cal.App.4th at p. 420 ["In the face of an asserted loss of memory, these protections 'will of course not always achieve success, but *successful* cross-examination is not the constitutional guarantee.' [Citation.]" italics added].)

"'We review the trial court's rulings on the admission of evidence for abuse of discretion. [Citation.] . . . [¶] "A statement by a witness that is inconsistent with his or her trial testimony is admissible to establish the truth of the matter asserted in the statement under the conditions set forth in Evidence Code sections 1235 and 770." [Citation.] "The 'fundamental requirement' of [Evidence Code] section 1235 is that the statement in fact be *inconsistent* with the witness's trial testimony." [Citation.] "'Inconsistency in effect, rather than contradiction in express terms, is the test for admitting a witness'[s] prior statement . . . .'" [Citation.]' [Citation.] Thus, for example, "'[w]hen a witness's claim of lack of memory amounts to deliberate evasion,

17

inconsistency is implied. [Citation.] As long as there is a reasonable basis in the record for concluding that the witness's 'I don't remember' statements are evasive and untruthful, admission of his or her prior statements is proper. [Citation.]"' [Citation.]" (*People v. Homick*, *supra*, 55 Cal.4th at p. 859, fn. omitted.)

"When, as here, there are no disputed facts, our review of the court's determination that its . . . order did not violate [defendant's] rights under the confrontation clause is de novo. [Citations.]" (*People v. Alvarez* (2022) 75 Cal.App.5th 28, 36; compare, *People v. Bharth*, *supra*, 68 Cal.App.5th at p. 813 ["'We review de novo a claim under the confrontation clause that involves mixed questions of law and fact. [Citation.] Under this standard, we defer to the trial court's determination of "the historical facts" . . . but not the court's "application of [the] objective, constitutionally based legal test to [those] historical facts."' [Citation.]"].)

Here, the court's ruling admitting the audio recording was well within its discretion. At the hearing, defendant's mother did not recall picking up defendant and letting him stay with her. She did not recall at what address she then lived. She did not recall dating the victim, having him at her home, or whether the victim and defendant had ever met.

She repeatedly indicated she did not recall speaking with officers in July or August of 2015. She twice declined the People's offer to have her refresh her recollection by reviewing the transcript of the interview.

Defendant's mother could not recall ever calling 911 for anyone getting shot in her home. She eventually remembered appearing in court with respect to something having to do with defendant, but not about what the matter concerned.

In the audio recorded interview, defendant's mother told officers she had picked up defendant and brought him to her home the day before the shooting. He had slept on the couch overnight. She had invited the victim, whom she identified as her boyfriend. It was the first time defendant had met the victim. Defendant's mother recalled that defendant was drunk and that she argued with him with respect to his behavior. She recalled defendant and the victim talking. She recounted that defendant shot him three times, after which she called 911.

Defendant's mother's prior statements to the officers were both implicitly and effectually inconsistent with her testimony at the evidentiary hearing. (*People v. Homick*, *supra*, 55 Cal.4th at p. 859) Moreover, there was ample basis for the court to conclude that defendant's mother's testimony was feigned and evasive. (*People v. Johnson*, *supra*, 3 Cal.4th at pp. 1219-1220.) Her statements to the officers were made just after a high impact event consisting of the shooting of her boyfriend in her own home in her presence. On the other hand, her testimony in court was made years afterward, when she had a motive to be evasive in order to spare defendant, her son, the consequences of his actions. As the court noted, defendant's mother's testimony that she could not remember a shooting perpetrated in her own home that injured her boyfriend was "rather incredulous," "rather evasive," and even "intentionally evasive."

19

Finally, defendant was not deprived of his right to cross-examine the witness. Defense counsel cross-examined defendant's mother about her heavy drinking and mental issues at the time of the shooting. Thus, defense counsel was able to argue that mother's failure to remember the incident, her heavy drinking, and her mental issues all impugned the veracity of her statements to the officers after the shooting. Therefore, the court had "the opportunity to see the demeanor and assess the credibility of the witness, which in turn [gave] it a basis for judging the prior hearsay statement's credibility." (*People v. Gunder*, *supra*, 151 Cal.App.4th at p. 420; see *Delaware v. Fensterer*, *supra*, 474 U.S. at p. 22 ["[T]he Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose . . . infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony."].) The court did not deprive defendant of any right of confrontation to which he may have been entitled.

Defendant exposits *People v. Murillo* (2014) 231 Cal.App.4th 448 (*Murillo*) in support of his contention that his confrontation rights were violated. In *Murillo*, prior to trial, one of the victims identified the defendant as the shooter from a photographic lineup. (*Id*. at p. 450.) At trial, the victim refused to testify. "The trial court allowed the prosecutor to ask [the victim] 110 leading questions about his out-of-court statements and to display the photographic lineups on which he had written that [the defendant] was the shooter." (*Ibid*.) Defense counsel filed a motion for a mistrial, which the trial court denied. (*Id*. at p. 453)

On appeal, the court reversed holding that the trial court should have granted the motion. The court noted that the victim's "refusal to answer over 100 leading questions while the prosecutor read to the jury from his police interviews denied [the defendant] the opportunity to cross-examine the victim on what was tantamount to devastating adverse testimony." (*Murillo*, *supra*, 231 Cal.App.4th at p. 456.) The court further observed, "the independent evidence of [the defendant's] guilt was not strong. No other witness identified [the defendant] in this case." (*Ibid*.)

*Murillo* is distinguishable. First, *Murillo* involved a criminal trial in which the defendant involuntarily participated and at which defendant's guilt and potential punishment were at issue. Here, defendant voluntarily petitioned the court pursuant to a process by which he could conceivably receive relief pursuant to the Legislature's act of lenity and for which he could not be found guilty or receive any additional punishment. Second, the People here did not ask over 100 leading questions of defendant's mother. Third, the People did not ask questions of defendant's mother while reading from her prior statement to the police. Fourth, defendant's mother did not refuse to testify. Rather, she gave testimony despite frequent reliance on feigned memory lapses. Fifth, there was abundant evidence of defendant's guilt, especially by virtue of his plea. Thus, *Murillo* does not support defendant's contention that any right to confrontation he had was violated.

## III.  DISPOSITION

The order denying defendant's petition is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
J.


We concur:


RAMIREZ
P. J.


MENETREZ
J.